ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 5:06CV597 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>Judge John R. Adams</u> |
| | ) | |
| TRI-STATE GROUP, INC., | ) | MEMORANDUM OPINION & ORDER |
| | ) | [Resolving Doc. 11] |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on motion by Defendant, Tri-State Group, Inc., for summary judgment. The sole issue before the Court is whether the word "building" in an easement owned by Plaintiff, the United States of America, encompasses certain oil storage tanks and separators owned by Defendant. According to the United States, the storage tanks and separators are "buildings" and must be removed. Defendant, on the other hand, argues that the word "buildings" in the easement does not apply to its oil storage tanks and separators and asks the Court to grant summary judgment in its favor.

The easement at issue is a flowage easement that the United States purchased as part of a comprehensive plan to provide flood control for the Muskingum River watershed area. When Defendant later acquired title to the land, the deed specifically referenced that the title was subject to the United States' flowage easement. The easement specifically provides that "no new buildings be built" below an elevation of nine hundred and sixty-two feet. If any buildings are built below the specified elevation, they are built "at the risk of the owner."

According to the United States, Defendant's oil storage tanks and separators violate the

easement. The United States urges the Court to look at the parties' intent when they created the easement and find that the word "building" applies to Defendant's oil storage tanks and separators. The United States argues that the word "building" is ambiguous and in order to clarify the ambiguity, the Court must construe the word with a view toward giving effect to the manifest intent and purpose of the parties, which the United States argues was to restrict all structures that would take up valuable storage capacity within the reservoir area. Defendant, on the other hand, argues that the word "buildings" is not ambiguous and does not encompass other structures.

The parties agree that Ohio law governs this dispute. Accordingly, the Court must interpret a contract – or in this case the flowage easement – so as to carry out the parties' intent. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997). "[T]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Shifrin v. Forest City Ent., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992). If the terms of the contract are unambiguous, a court must interpret the contract in a manner consistent with those terms. *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978). "Contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible of more than one interpretation." 740 N.E.2d 328, 229 (Ohio App. 2000). A court may only look to extrinsic evidence to determine the parties' intent if it finds an ambiguity in the contract. *Id.*

In this case, the United States argues that the word "building" is a source of ambiguity in a restrictive covenant. Thus, the United States urges the Court to construe the word "building" liberally to include other structures (specifically, the oil storage tanks and separators) that do not

fall within the strict definition of the word "building."  To hold otherwise, the United States argues, would defeat the purpose of the easement and allow Defendant (and possibly others) to take up valuable storage space with oil tanks.  To support its argument, the United States cites to various cases in which the courts construed the definition of the word "building" broadly.

Having examined both parties' arguments, the Court finds itself in the unenviable position of having to determine whether the word "building" encompasses Defendant's oil storage tanks and separators because it recognizes the hardship that Defendant will face from an adverse ruling.  Nonetheless, the Court finds that it must rule in favor of the United States and deny Defendant's Motion for Summary Judgment.

The Court agrees with the United States that the word "building" is a source of ambiguity in the easement at issue.  In fact, this subject has been the topic of an annotation in American Law Reports.  *See generally* 18 A.L.R.3d 850.  In his annotation, *What Constitutes a "Building" in a Restrictive Covenant,* author C.D. Sumner notes that while restrictive covenants that restrict land use are generally strictly construed, there is a strong tendency by courts to construe the term "building" with a view toward giving effect to the manifest intent of the parties.  *Id.* at § 2.  "[T]o that end, the courts may extend the term as to cover some structures which would not fall within the strict lexicographical definition of the word 'building.'"  *Id.*

Sumner explains that a building is traditionally defined "as a structure or edifice inclosing a space within its walls, and usually covered with a roof . . . ."  *Id.*  However, he notes that it is "difficult to reach an absolute and inflexible definition of the term 'building' for the purposes of  restrictive covenants" and he discusses a number of cases in which courts have found that structures with both a roof and walls were *insufficient* to be classified as a building, as

3

well as those cases where structures with a roof and no walls *were* found to be buildings. *Id.* (citations omitted). Pertinent to the instant matter, however, are those cases that deal with a variety of man made structures that do not meet the strict dictionary definition of the word building. A review of these cases illustrates the point that it is indeed difficult to reach an absolute and inflexible definition of the word "building." *See generally Curtis v. Schmidt*, 237 NW 463 (Iowa 1931) (holding that several structures used by the defendant in operating a sand and gravel business were buildings because the primary purpose of the restrictive covenant was retention of the view from the grantor's premises); *but see Metry Club Gardens Assoc. v. Newman*, 182 So. 2d 712 (La. App. 1966) (holding that two concrete slabs were not buildings within the ordinary meaning of such terms).

Having reviewed this easement in light of the above, the Court finds that the word building is ambiguous. As previously stated, "[c]ontractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible of more than one interpretation." 740 N.E.2d 328, 229 (Ohio App. 2000). Here, the term building is reasonably susceptible to more than one interpretation. In other words, it is susceptible to Defendant's strict interpretation, just as it is susceptible to the United States' broad interpretation. In other words, it is ambiguous.

The ambiguity becomes apparent because the language of the easement itself explicitly states that it is a "flood easement," the purpose of which is to allow for water storage. It is nonsensical to read the easement in a manner that would prohibit only certain structures, i.e. traditional "buildings" from being erected on the land when other structures could reduce the water storage capacity as well. Here, the intent of the parties in creating the easement was to

4

allow for water storage space. To that end, the parties obviously recognized that the construction of "buildings" would hinder this goal and sought to prohibit construction of same. Accordingly, to allow Defendant to maintain its oil storage tanks and separators would go against the manifest intent of the parties in creating the easement. For that reason, Defendant's Motion for Summary Judgment is DENIED. The Court will schedule a status conference in this matter to discuss how the case will proceed.

      IT IS SO ORDERED.

| | |
|---|---|
| November 6, 2006 | /s/ John R. Adams |
| Date | John R. Adams |
| | U.S. District Judge |