UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  5:06cv597 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| TRI-STATE GROUP, INC., formerly, TRI-STATE ASPHALT CORP., | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | [Resolving Doc. 32] |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court upon Plaintiff's Motion for Summary Judgment ("Motion") (Doc. 32).  The Court has been advised, having reviewed Plaintiff's Motion and the Response and Reply thereto, as well as applicable case law.  For the reasons set forth herein, Plaintiff's Motion is GRANTED and judgment in this matter is entered in favor of Plaintiff.

**I.      Factual and procedural background**

This case involves an Easement owned by Plaintiff over land held by Defendant, which permits water flowage over Defendant's land for operation of the Bolivar Dam, a means of flood control and water conservation for the Muskingum River Basin.  The parties are largely in agreement as to the facts of this matter.  Therefore, the Court will not delve too deeply into the factual background.  The main issue before the Court today is the construction of the language of the Easement in question.

The language of the Easement is, in pertinent part, as follows:

The right to back water up to and over the said premises by erection and operation of the Bolivar Dam, as provided in the Official Plan of said Muskingum Watershed Conservancy District, with a spillway of the height proposed in said Official Plan, being at an elevation of about nine hundred and sixty-two (962) feet above sea level, with the right of the Grantee to require the removal of all existing buildings below an elevation of nine hundred and sixty-two (962) feet above sea level and with the agreement that no new buildings be built below an elevation of nine hundred and sixty-two (962) feet above sea level except by permission of the

> District, and that all buildings built or maintained below the elevation of the spillway of the dam (nine hundred and sixty-two (962) feet above sea level) be built and maintained at the risk of the owner . . . the Grantors hereby waiving all damages that may arise from the detention of said waters by reason of said dam.

Doc. 32-5.

The parties disagree as to the definition of the word "building." Defendant has two oil storage tanks and two separators on the property that are below the spillway elevation of 962 feet above sea level. The tanks were constructed there well after the Easement was granted and Defendant did not ask permission from Plaintiff to construct them.[1] Plaintiff contends that the tanks are buildings and are therefore prohibited by the Easement, and further contends that their presence on the property limits the capacity of the dam and increases the possibility of downstream flooding.

Defendant filed a motion for summary judgment (Doc. 11), which the Court denied (Doc. 16). Several months later, the Court issued a Judgment Entry (Doc. 25) in which it entered judgment in favor of Plaintiff for the reasons set forth in its opinion denying Defendant's motion for summary judgment. Defendant appealed, and the Court of Appeals for the Sixth Circuit dismissed the appeal without prejudice, finding that this Court had not yet entered judgment in the form of a final, appealable order. *See* Doc. 29. The parties had earlier stipulated to the dismissal of Defendant's counterclaim (*see* Doc. 24) but it appears from the docket in this matter that the Court never formally accepted this dismissal. It now does so. By stipulation of the parties, Defendant's counterclaim is DISMISSED. The Court now has before it only Plaintiff's Motion, the granting of which will resolve all pending claims.

---

[1] The first easement over the property now owned by Defendant was acquired by the Muskingum Watershed Conservancy District ("MWCD") in 1939. Plaintiff acquired the Easement from the MWCD in 1940. Defendant purchased the property in 1991, and the deed noted that the property was subject to the Easement.

2

## II.     Legal standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmoving party. *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

Summary judgment is appropriate if the party that bears the burden of proof at trial does not establish an essential element of its case. *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Id.* at 248. Summary judgment should be denied if, based upon the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.    Analysis

As noted above, the Court is faced with the question of the proper construction of the Easement, and particularly what constitutes a building for purposes of the Easement. Plaintiff argues that the term "building" is ambiguous, and that the Court must therefore look to the intent

3

of the parties at the time of the granting of the Easement.  That purpose, according to Plaintiff, was to prevent servient estate owners within the reservoir area from constructing structures such as Defendant's oil tanks that would take up space reserved for water storage.  Because the MWCD—and later Plaintiff—acquired the Easement for the purpose of retaining water during flood conditions, Plaintiff argues that construction of the Easement language must provide it the ability to do just that without sacrificing water storage capacity to structures erected by landowners.

Defendant counters that Plaintiff's definition of "building" would encompass virtually any structure or object, including a fence or a tree.  Had the parties intended such a result, Defendant contends that they could have used the terms "structure" or "obstruction" rather than "building."  Defendant asserts that the proper definition of "building" involves, in some form, a constructed edifice with walls and a roof that is intended to house people or tangible property, and that oil storage tanks do not fall within that definition.

As defined by the Ohio Supreme Court, an easement is "a right, without profit, created by grant or by prescription, which the owner of one estate [called the dominant estate] may exercise in or over the estate of another [called the servient estate] for the benefit of the former." *Trattar v. Rausch*, 95 N.E.2d 685, 688 (Ohio 1950) (alterations in original) (quoting *Yeager v. Tuning*, 86 N.E. 657, 658 (Ohio 1908).  Ohio courts have held that "where a property owner unlawfully obstructs or interferes with the easement rights of an easement holder the holder of the easement rights has the authority to remove those obstructions." *Rueckel v. Texas E. Transmission Corp*, 444 N.E.2d 77, 84 (Ohio Ct. App. 1981); *see also Langhorst v. Riethmiller*, 368 N.E.2d 328, 331 (Ohio Ct. App. 1977) ("The law is well settled . . . that injunctive relief is available to the owner of an easement against an unwarranted interference with an obstruction of the easement by the

owner of the fee."). "Once an easement becomes part of the chain of title of the dominant property, such easement passes with the transfer of the property." *Pence v. Darst*, 574 N.E.2d 548, 551 (Ohio Ct. App. 1989).

The construction of the language of an easement is subject to the rules of contract construction.

> As with any written agreement, the primary purpose in construing an easement is to ascertain the parties' intent. If the intent is plain from the face of the document, then it is not necessary to resort to rules of construction to determine the easement's effect. When the question is the scope of an easement, the court must look to the language of the easement to determine its extent. If there is no specific delineation of the easement in the instrument, or if the delineation is ambiguous, then a court may look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement.

*Murray v. Lyon*, 642 N.E.2d 41, 43-44 (Ohio Ct. App. 1994) (internal quotations omitted) (citing 36 Ohio Jurisprudence 3d (1982) 414, Easements and Licenses, Section 25; *Columbia Gas Transm. Corp. v. Bennett*, 594 N.E.2d 1, 8 (Ohio Ct. App. 1990); *Sheldon v. Flinn*, 624 N.E.2d 1109, 1112-13 (Ohio Ct. App. 1993). When the language of an easement is either ambiguous or silent on a point, "a court may define its scope by what is reasonably necessary and convenient to accomplish the purpose for which the easement was granted." *Columbia Gas Transm. Corp.*, 594 N.E.2d at 8.

In this case, the Easement does not define the term "building," which it uses repeatedly. Plaintiff argues that the term has no universal meaning, and is therefore ambiguous. In support of this argument, Plaintiff points to definitions from treatises as well as opinions from courts in several states. One of those opinions states that "[t]he word 'building,' in its legal sense, is ambiguous, and is susceptible of being construed, without violence, as including many different kinds of structures and edifices erected by man." *Great E. Cas. Co. v. Blackwelder*, 94 S.E. 843, 844-45 (Ga. Ct. App. 1918). The *Blackwelder* court went on to construe the term "building" in

5

the contract of insurance at issue to include a crane. Plaintiff then urges that, once the Court concludes that the term is ambiguous, it should look to the intent of the parties to determine what was meant by the term. Citing a number of other cases from other districts in which the courts construed the term "building" to include diverse, non-residential structures when the intent of the parties so required, Plaintiff asks the Court to find that the parties in this matter intended for Plaintiff to be able to use the land for water storage, the capacity for which is compromised by the presence of Defendant's oil storage tanks.

Defendant contends that the term "building" is not at all ambiguous, citing dictionary definitions that involve a fixed structure with walls and a roof, and one of which provides as well for the purpose of the structure to include a dwelling, storehouse, factory, or shelter for animals. Should the Court find that the term is ambiguous, Defendant urges that the Court construe the Easement in such a way as to place the least restrictions on its use of the land, citing *Houk v. Ross*, 296 N.E.2d 266 (Ohio 1973).

Previously, in its Order denying Defendant's motion for summary judgment (*see* Doc. 16), the Court held that the term "building" was ambiguous as it was used in the Easement. *See United States of America v. Tri-State Group, Inc.,* No. 5:06cv597, 2006 WL 3228758 at *2-3 (N.D.Ohio Nov. 6, 2006). This remains the conclusion of the Court. Because the term is ambiguous, the Court must construe the Easement in such a way that Defendant's free use of the land is least restricted, *see Houk*, 296 N.E.2d at 274-75, but must also take into account the intent of the parties to the granting of the Easement, *see Murray*, 642 N.E.2d at 43-44.

The plain language of the Easement clearly provides for the backup and detention of water on the servient property for purposes of operating and maintaining the Bolivar Dam. Therefore, the intent of the parties was clearly to permit the Grantee (now Plaintiff, the current

Easement holder) the ability to use the space on the property for water storage. Plaintiff's representative has averred that water storage capacity is lost to the presence of the oil storage tanks. *See* Doc. 32-2 at 4.

Competing with this purpose is the principle that, in the face of ambiguity, the language of an Easement must be construed in such a way as to cause the least restriction on the free use of land. Defendant argues that this means that it should be able to keep the oil storage tanks on the property without any restrictions.

However, Defendant's interpretation completely disregards the intent of the parties. The Court must strike a balance between intent and limited restrictions on the use of the land. Those restrictions must be imposed within the context of the intent of the parties. The tanks at issue could be described as buildings in that they operate as storehouses and are completely enclosed by walls and a covering or roof for that purpose. As buildings, the storage tanks are prohibited by the language and intent of the Easement because they take up storage space within the water backup area. The Court finds that Plaintiff's Motion is well-taken, and GRANTS summary judgment in Plaintiff's favor, and Defendant is hereby ordered to remove its oil storage tanks from the premises.

**IV. Conclusion**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is GRANTED. Further, for the sake of clarification, the Court accepts the parties' stipulation (Doc. 24) as to the dismissal of Defendant's Counterclaim.

IT IS SO ORDERED.

DATED: January 15, 2010        */s/ John R. Adams*
                                                               Judge John R. Adams
                                                               UNITED STATES DISTRICT COURT